UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL McCUNE | No. 2:14-cv-00034-KJM-EFB |
| Plaintiff, | |
| v. | ORDER |
| PARTY CITY CORPORATION, et al., | |
| Defendants. | |

       The central issue in this action is whether the Roseville Center's parking facilities constitute a single common parking lot serving all of the buildings in the shopping center or twelve distinct parking lots each serving only its own building for purposes of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq*. (the "ADA").  Before the court is defendant Donahue Schriber Realty Group, LP's ("Donahue Schriber") motion for summary judgment.  ECF No. 26. Plaintiff Michael McCune opposed the motion, ECF No. 27, and defendant replied, ECF No. 29.

       In response to plaintiff's objection, the court allowed plaintiff to file a supplemental brief to challenge the new evidence submitted with defendant's reply, ECF No. 40, and allowed defendant to file a sur-reply, ECF No. 43.  McCune's objections are otherwise overruled.  The original Operation and Easement Agreement ("OEA") and Amended OEA for the

1

1 Roseville Center are readily available through public records searches, and plaintiff has not
2 shown any prejudice from the court's consideration of the evidence.

3        The court submitted the motion as provided by Local Rule 230(g).  The court now
4 GRANTS defendant's motion for summary judgment, finding the center's parking facilities
5 constitute a single common parking lot not dedicated to any particular building or parcel of land.

6 I.     UNDISPUTED FACTS

7        The Roseville Center is a retail shopping center facility located at 1917 Douglas
8 Blvd., Roseville, California.  Harjer Decl. ¶ 2, ECF No. 26-3.  It was originally constructed in
9 1991 and consists of twelve parcels of land.  *See id.* ¶ 3; Pl.'s Ex. A, ECF No. 27-3.  The Party
10 City parcel at issue is owned by defendant Donahue Schriber and operated by tenants Party City
11 and Petco.  *See* Harjer Decl. ¶¶ 2, 4; Finnerty Decl. ¶ 3, ECF No. 26-2 ("Finnerty Decl. I").

12        McCune, a C5-C6 quadriplegic,[1] is unable to walk or stand, and requires the use of
13 an electronic wheelchair when traveling in public.  Compl. ¶ 8, ECF No. 1.  He filed the
14 complaint on January 7, 2014, alleging he encountered ten architectural barriers when he visited
15 Party City, and asserting claims for violations of the ADA, the California Disabled Persons Act,
16 the California Unruh Civil Rights Act, and California Health & Safety Code § 19955(a).  ECF
17 No. 1.  Eight of the ten alleged architectural barriers were located within the interior of the Party
18 City store.  Finnerty Decl. I ¶ 3.  On March 17, 2014, defendant Party City settled with plaintiff
19 and was dismissed from this action.  *See id.*; *see also* ECF Nos. 7, 9.  Only two of the
20 architectural barriers identified in the complaint relate to the remaining defendant Donahue
21 Schriber: namely, McCune alleges there were no accessible parking spaces at the Party City store,
22 and one of the parking spaces designated as being accessible lacked an international symbol of
23 accessibility.  *See* Finnerty Decl. I ¶ 4.  It is now undisputed the parking space McCune alleges
24 lacked an international symbol of accessibility was previously decommissioned as an accessible
25 parking space, and has not been designated as accessible at any time during at least the two years

26 ――――――――――
      [1] A quadriplegic is a person affected with paralysis of all four limbs.  Merriam-Webster
27 Dictionary (online ed. 2015), http://www.merriam-webster.com/dictionary/quadriplegic.  "C5"
and "C6" refer to the injured vertebrae in the cervical spine.
28

2

1  prior to McCune's filing of the complaint in this action.  *See* Pl.'s Response to Statement of
2  Undisputed Facts no. 6, ECF No. 27-1 ("Pl.'s SUF"); Harjer Decl. ¶ 5; Finnerty Decl. I ¶ 2.
3         It is also undisputed the Party City parcel does not provide any accessible parking
4  spaces.  Every land parcel at the Roseville Center except the Party City parcel provides accessible
5  parking spaces, including neighboring parcels.  *See* Pl.'s SUF no. 11.  Accessible spaces are
6  provided at the entrances to Raley's and Target, and the entrance to Styles for Less, which is
7  approximately equidistant between Raley's and Target, *see id.*  Donahue Schriber has provided a
8  diagram that illustrates the shopping center's layout and the relationship of stores to each other:



26  Donahue Schriber Diagram of Center, Harjer Decl., Ex. 1, ECF No. 26-3 (rotated horizontally)
27  (from top left clockwise, labels identify: Raley's, Petco, Party City, Leslie's Swimming Pool
28  Supplies, Weight Watchers, Styles for Less, Supercuts, Sprint, Payless, Target, Papa Murphy's,

3

FedEx Office, Jack in the Box, Chevy's, Rubio's, Big 5). An accessible pedestrian route runs directly adjacent to the northern storefronts at the Roseville Center, connecting the customer entrances to Raley's, Party City, Styles for Less, and Target. *See id.*; Pl.'s SUF no. 11.

## II. LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts."). Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

III.     DISCUSSION

As stated above, the two remaining alleged architectural barriers at issue are the lack of accessible parking spaces on the Party City parcel of land and the lack of an international symbol of accessibility on one of the designated parking spaces. The court addresses each alleged barrier in turn.

     A.     Accessible Parking Spaces

          1.     ADA Accessibility Guidelines

The ADA was adopted to address discrimination against individuals with disabilities. *Chapman v. Pier 1 Imports*, 631 F.3d 939, 944–45 (9th Cir. 2011). Title III of the Act, which applies to places of public accommodation, requires owners, lessors or lessees of such facilities, if built or altered after 1993, to ensure that the facilities are "readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." 42 U.S.C. § 12183(a)(2); *Rush v. Kim*, 908 F. Supp. 2d 1117, 1119 (C.D. Cal. 2012). Here, defendant Donahue Schriber concedes plaintiff is disabled and the subject property is a place of public accommodation, but disputes whether the facilities are "readily accessible to and usable by individuals with disabilities." "In general, a facility is 'readily accessible to and usable by individuals with disabilities' if it meets the requirements promulgated by the Attorney General in the 'ADA Accessibility Guidelines' or the 'ADAAG,' which is essentially an encyclopedia of design standards." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011); *Kohler v. Flava Enter., Inc.*, 826 F. Supp. 2d 1221, 1226 (S.D. Cal. 2011), *aff'd*, 779 F.3d 1016 (9th Cir. 2015).

The Department of Justice's ("DOJ") ADA Accessibility Guidelines must be consistent with the minimum guidelines and requirements issued by the Architectural and Transportation Barriers Compliance Board (the "Access Board"), a federal agency tasked with establishing the minimum guidelines for accessible public accommodations. *Miller v. Cal. Speedway Corp.*, 536 F.3d 1020, 1024–25 (9th Cir. 2008) (citing 42 U.S.C. § 12186(c); 29 U.S.C. § 792(b)). In 1991, the Access Board published its first ADA Accessibility Guidelines, and, after an opportunity for public comment and revision, the DOJ adopted and promulgated the guidelines

5

1    verbatim ("1991 Standards"). 56 Fed. Reg. 35,408–01 (1991); *Rush*, 908 F. Supp. 2d at 1119.

2    The Access Board revised the standards in 2004. *Scherr v. Marriott Int'l*, 703 F.3d 1069, 1076

3    (7th Cir. 2013). In 2010, the DOJ adopted these updated standards as enforceable regulations

4    ("2010 Standards"). *Id.* As of March 15, 2012, new construction or alterations must comply with

5    the 2010 Standards. *Id.*; 28 C.F.R. § 36.406(a)(3). Before that date, a business owner in its

6    discretion can choose to comply with either the 2010 Standards or the 1991 Standards. *Kohler*,

7    826 F. Supp. 2d at 1229 (citing Nondiscrimination on the Basis of Disability by Public

8    Accommodations and in Commercial Facilities, 75 Fed. Reg. 56236, 56254–55 (Sept. 15, 2010)

9    (to be codified at 28 C.F.R. pt. 36)). Defendant Donahue Schriber argues it has complied with

10   both the 1991 Standards and the newer 2010 Standards. ECF No. 26-1 at 6.

11   The 1991 Standards require parking lots to provide a certain minimum number of

12   accessible parking spaces, calculated based on the total number of parking spaces in the lot. 28

13   C.F.R. Pt. 36, App. A § 4.1.2(5)(a). The 2010 Standards likewise require "parking facilities" to

14   provide a certain minimum number of accessible parking spaces based on the total number of

15   parking spaces in the "parking facility." 2010 ADA Standards for Accessible Design ("2010

16   Standards") § 208.2. The advisory note to section 208.2 explains section 208.2 uses the term

17   "parking facility" instead of "parking lot" "so that it is clear that both parking lots and parking

18   structures are required to comply with this section." 2010 Standards Advisory 208.2 Minimum

19   Number.

20   With respect to the location of the accessible parking spaces, the 1991 Standards

21   provide:

22   > Accessible parking spaces serving a particular building shall be
23   > located on the shortest accessible route of travel from adjacent
24   > parking to an accessible entrance. In parking facilities that do not
25   > serve a particular building, accessible parking shall be located on
     > the shortest accessible route of travel to an accessible pedestrian
     > entrance of the parking facility . . . .

26   28 C.F.R. Pt. 36, App. A § 4.6.2 (emphases omitted). The 2010 Standards similarly provide:

27   > [Accessible parking spaces] that serve a particular building or
28   > facility shall be located on the shortest accessible route from
     > parking to an [accessible entrance]. Where parking serves more

6

> than one accessible entrance, [accessible parking spaces] shall be dispersed and located on the shortest accessible route to the accessible entrances. In parking facilities that do not serve a particular building or facility, [accessible parking spaces] shall be located on the shortest accessible route to an accessible pedestrian entrance of the parking facility.

2010 Standards § 208.3.1 (emphases omitted). The 2010 Standards specify these requirements apply to "[p]arking *facilities*." *Id.* § 208.3 (emphasis in original).

### 2. Analysis

The complaint alleges defendant violated the ADA by not offering accessible parking spaces "at the [Party City] Store." Compl. ¶ 10. Defendant now moves for summary judgment, arguing plaintiff cannot prove defendant did not comply with the relevant ADA Standards governing accessible parking.

In all statutory construction cases, the court "begin[s] with the language itself [and] the specific context in which that language is used." *McNeill v. United States*, 563 U.S. 816, 131 S. Ct. 2218, 2221 (2011) (internal quotation marks and citation omitted). Here, the 2010 Standards specify the parking requirements apply to "parking facilities" and calculate the minimum number of required accessible parking spaces based on the total number of parking spaces in the "parking facility." 2010 Standards §§ 208.2, 208.3. Similarly, the 1991 Standards calculate the minimum number of required accessible parking spaces based on the total number of parking spaces in the "parking lot." 28 C.F.R. Pt. 36, App. A § 4.1.2(5)(a). The 1991 and 2010 Standards do not include an independent requirement that every building or parcel, let alone assessor's parcel, provide accessible parking spaces. In addition, the Standards only require that the accessible spaces be located on the shortest accessible route to an accessible entrance to a particular building when the accessible parking spaces serve that particular building. *Id.* § 4.6.2; 2010 Standards § 208.3.1.

As a result, defendant must offer its own accessible parking spaces in front of Party City only if its parking spaces constitute a separate "parking facility" that serves only the Party City building. If, instead, defendant's parking spaces are part of a larger, Roseville Center "parking facility" that serves all of the buildings at the center, defendant is not required to

1  independently offer accessible parking spaces for Party City.  Consistent with this understanding,
2  the parties jointly have presented the question before the court as whether the Roseville Center
3  has a single common parking lot that serves multiple buildings, or whether each building at the
4  center is served by its own smaller parking lot.  If the center has a single shared parking lot,
5  plaintiff has not argued the center as a whole does not comply with the standards for a shared
6  parking facility, such as by not properly dispersing and locating the accessible parking spaces.
7  *See* 28 C.F.R. Pt. 36, App. A §§ 4.1.2(5)(a), 4.6.2; 2010 Standards §§ 208.2, 208.3.1.

8  To support its motion for summary judgment, Donahue Schriber has submitted a
9  declaration from the property manager stating, "The Roseville Center is a private facility with one
10 large parking lot that serves its many buildings.  The parking facilities do not serve a particular
11 building."  Harjer Decl. ¶ 6.  Defendant also has submitted an aerial photograph of the center:



21 Harjer Decl., Ex. 2, ECF No. 26-3 (rotated horizontally, with Raley's, Party City, and Target
22 oriented at the top of the image).

23 Finally, Donahue Schriber submitted a copy of the Amended OEA for the
24 Roseville Center.  ECF No. 30-1.  The original OEA was recorded on October 16, 1987.  *See id.*
25 at 2.  That agreement was amended, restated and recorded on July 13, 1990.  *See id.*; Finnerty
26 Decl. ¶ 2, ECF No. 30 ("Finnerty Decl. II").  The Amended OEA defines the Common Areas as
27 "all areas within the exterior boundaries of the Shopping Center" excluding interior and sales
28 areas.  Amended OEA, Section 1.2; *see* Amended OEA at 2 (defining "Shopping Center" as the

parcels that make up the Roseville Center).  Section 2.1 of the Amended OEA specifically created a "non-exclusive easement for the passage and parking of vehicles over and across the parking and driveway areas" of each parcel for ingress and egress for use by customers and others "insofar as their activities relate to the intended use of the Shopping Center." *Id.* Section 2.1(a); *id.* Section 1.9 (defining "permittee").  The intended use of the Shopping Center is articulated in the eighth recital of the Amended OEA, as follows:

> WHEREAS, the signatories hereto intend to develop and operate their respective Tracts in conjunction with each other as integral parts of a retail shopping complex and in order to effectuate the common use and operation thereof, they desire to enter into certain covenants and agreements as a part of a general plan, and to grant to each other certain reciprocal easements, in, to, over and across their respective Tracts.

*Id.* at 2.

McCune has submitted a Placer County Assessor's map to show that the Roseville Center consists of twelve parcels each with a distinct parking lot serving only its building:



Pl.'s Ex. A, ECF No. 27-3 (showing Roseville Center on right side of map; plaintiff outlined the boundaries of the Party City parcel in red marker).  The Placer County Assessor's Office prepares

9

1  parcel maps to assess the tax information of real property.  *See id.* (note at bottom); What We Do,
2  County of Placer, http://www.placer.ca.gov/departments/assessor/about-us/what-we-do (last
3  visited Mar. 16, 2016).
4         McCune has also submitted an image overlapping the property boundaries from
5  the Assessor's parcel map with an aerial photograph of the Center to show the boundaries of the
6  twelve separate parking lots he argues exist:



20  Pl.'s Ex. C (with plaintiff's marking of the property boundaries showing as thin white lines on top
21  of the image).
22         Based on the evidence submitted, the court finds the parking spaces at the
23  Roseville Center comprise one common parking facility serving multiple buildings for purposes
24  of the ADA Standards.  The Amended OEA specifically created an easement for parking on each
25  parcel for use by all patrons, and established common areas "as integral parts of a retail shopping
26  center . . . to effectuate the common use and operation thereof."  Amended OEA at 2.  Plaintiff
27  has not submitted evidence of any markers or physical barriers dividing the parking lot along the
28  irregularly shaped parcel boundary lines, or any other evidence that the parcel owners in fact limit

10

parking to their customers only.  Each aerial photograph submitted by a party shows one large, continuous parking lot.  Moreover, plaintiff has not identified any authority in the ADA regulations or case law defining the relevant parking facility as based on assessor parcels.

Based on the record before the court, no reasonable juror could conclude each parcel at the Roseville Center has its own distinct parking lot serving only the building tied to that parcel.  Summary judgment is GRANTED as to plaintiff's ADA claim premised on a lack of accessible parking.

B.  International Symbol of Accessibility

Section 4.6.4 of the 1991 Standards requires accessible parking spaces to be designated as reserved for persons with disabilities by a sign showing the symbol of accessibility. The 2010 Standards similarly mandate that accessible parking spaces be identified with the symbol of accessibility.  2010 Standards § 502.6.  Plaintiff does not dispute that the parking space described in the complaint was decommissioned as an accessible space before he parked in it. Pl.'s SUF no. 6.  Because the sign requirement only applies to accessible parking spaces, the decommissioned space was not required to be designated with the accessibility symbol.

Summary judgment is GRANTED as to plaintiff's ADA claim premised on a lack of an international symbol of accessibility.

C.  State Law Claims

Defendant moves for summary judgment on plaintiff's state law claims for violation of the California Disabled Persons Act, Cal. Civ. Code §§ 54, 54.1, violation of the Unruh Civil Rights Act, Cal. Civil Code §§ 51, 51.5, and the Denial of Full and Equal Access to Public Facilities, Health & Safety Code §§ 19955, 19959, because they are predicated wholly on the same two alleged architectural barriers as plaintiff's ADA claim.  ECF No. 26-1 at 4, 6–7; Pl.'s SUF nos. 15 & 16; *see Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1133 (C.D. Cal. 2005).  Plaintiff's opposition does not respond to this argument or identify evidence apart from defendant's alleged ADA violations. The court GRANTS defendant's motion for summary judgment as to plaintiff's state law claims.

*See Celotex*, 477 U.S. at 324 (requiring the nonmoving party to designate "specific facts showing that there is a genuine issue for trial" (citation omitted)).

IV.     CONCLUSION

For the foregoing reasons, the court GRANTS defendant's motion for summary judgment.

Defendant requests the court order plaintiff and plaintiff's counsel to show cause why the court should not sanction them for failing to conduct a reasonable inquiry to verify whether their theory as to the parking lot configuration was well grounded in fact. *See* ECF No. 26-1 at 9; ECF No. 36 at 2; ECF No. 43 at 6 (citing Fed. R. Civ. P. 11). Based on the record before the court, including defendant's submission of the Amended OEA for the first time with the reply, the court declines to issue such an order at this time.

IT IS SO ORDERED.

DATED: March 17, 2016.

_____
UNITED STATES DISTRICT JUDGE